311 P.2d 381

**Refugio VARGAS and Frances Vargas, his wife (meaning her daughter), Appellants,**

v.

**Alvin B. CLAUSER, Appellee.**

No. 6135,

Supreme Court of New Mexico.

May 3, 1957.

Rehearing Denied June 4, 1957.

Lorenzo A. Chavez, Arturo G. Ortega, Albuquerque, for appellants.

J. L. Leftow, Lewis R. Sutin, Albuquerque, for appellee.

LUJAN, Chief Justice.

The plaintiffs, Higinio Griego, Refugio and Frances Vargas, hereinafter called the appellants, filed their causes of action against the defendant, Dr. Alvin B. Clauser, hereinafter called the appellee to recover for personal injuries and property damages sustained due to a collision between appellee's automobile and appellant, Higinio Griego's pickup truck. The causes of action were consolidated for trial and a judgment was entered for appellee on the verdict of the jury and appellants appeal.

By his complaint the appellant, Higinio Griego, alleged:

"That on or about the 18th day of November, 1954, at about 9:38 A.M. the plaintiff was driving his 1948 1-ton Diamond T truck east on Grand Avenue N.E. and at the intersection of Grand Avenue and Oak Street, N.E. the defendant negligently drove his car south on Oak Street into the intersection and into plaintiff's truck.

By their complaint, the appellants Refugio Vargas and Frances Vargas, his wife, alleged:

"That on or about the 18th day of November, 1954, the plaintiff was a passenger in a 1948 Diamond-T truck which was being driven east on Grand Avenue within the City of Albuquerque; that as the said 1948 Diamond-T pickup truck was driven east on Grand Avenue and across the intersection of Grand Avenue and Oak Street, N.E. the defendant Alvin B. Clauser,

without having the right of way and in a negligent manner drove south and into said intersection and into the truck in which Frances Vargas was a passenger, overturning said truck and inflicting injuries to the plaintiff Frances Vargas."

By his answer the appellee denied that he did not have the right-of-way and that he drove in a negligent manner.

Section 64–14–17(a) defines an intersection as follows:

"The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two (2) highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

The accident occurred on November 18, 1954, at about nine thirty o'clock in the morning, in approximately the center of the south lane intersection of Grand Avenue with Oak Street, in the city of Albuquerque. Oak Street is a north and south street thirty-two feet in width, and Grand Avenue an east and west street, with two traffic lanes, each eighteen feet in width, running up to the east curb line on Oak Street—with a grass parkway, thirty feet in width, between said traffic lanes. East of the curb line of Oak Street Grand Avenue is thirty-two feet wide. There are two stop signs on Oak Street where it intersects Grand Avenue, one on the northwest corner and the other on the southeast corner. There is no stop sign where Oak Street crosses the intersection of the south lane on Grand Avenue. The plaintiff, Higinio Griego, was operating a 1948 Diamond T. pickup truck east along the south lane of Grand Avenue, accompanied by the plaintiffs, Frances Vargas and her infant daughter, Mary Lou. The defendant, Dr. Alvin B. Clauser, occupant of the 1955 Chrysler automobile, was traveling south on Oak Street.

Under point one appellants contend that the court committed error in giving defendant's requested instruction No. 5, which reads as follows:

"Section 64–14–17(b) reads in part as follows: Where a highway includes two (2) roadways 30 feet or more apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection.

"As applied to the facts of this case, I instruct you that there were two (2) separate intersections at Oak Street and Grand Avenue, thirty (30') apart at the place of this collision. The accident in question occurred in the

South roadway. I instruct you that there was no stop sign facing Dr. Clauser as he approached and entered the south roadway of Grand Avenue. Therefore, Dr. Clauser had no duty to stop before entering the South intersection by reason of any statute, ordinance or stop sign. He had a duty only to operate his automobile in a careful and prudent manner."

We are unable to agree with counsel. We are of opinion, and so hold, that in the application of the law, referred to by the trial judge, with reference to the operation of motor vehicles upon roadways of this state each of said traffic ways is to be treated as a separate intersecting highway, and that the district court did not err in so instructing the jury. See Beck v. Sosnowitz, 125 Conn. 553, 7 A.2d 389.

It is next contended that the court erred in refusing to give plaintiffs' requested instructions Nos. 15, 17 and 18, which read as follows:

"No. 15. You are instructed that ordinarily when two vehicles are approaching an intersection, the vehicle first entering the intersection has the right of way; however, this does not apply when one of the intersection streets has a stop sign. In such case, the driver entering the intersection from the intersecting 'stop' street must,

in addition to stopping, yield the right of way to the vehicle approaching on the street without a stop sign."

"No. 17. You are instructed that when an operator of an automobile approaches an intersection wherein there is a stop sign, it is his duty not only to bring his vehicle to a stop, but to remain in such position until such time as all other vehicles approaching the intersection and having the right of way have cleared the intersection.

"If you find that Dr. Clauser breached his duty in this respect, such is evidence of negligence on his part and if you find that such negligence is the proximate cause of the injuries, if any, to the plaintiffs, then you must find for the plaintiffs and assess damages as otherwise instructed in these instructions.

"No. 18. The drivers of two vehicles are presumed to know the law and their rights and obligations thereunder. The driver of the truck, driving on the through street, had the right to assume that the driver of the passenger car as he approached Grand Avenue from an intersecting street would obey the law by coming to a full stop and remaining there until the truck got past the intersection, thereby yielding the right of way.

"If you find that Dr. Clauser did not so yield the right of way, such is evidence of negligence on his part and if you find that such negligence is the proximate cause of the injuries, if any, to the plaintiffs, then you must find for the plaintiffs and assess damages as otherwise instructed in these instructions."

Section 64–18–29(b) of 1953 Compilation provides:

"The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at *one (1) or more entrances* thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

In view of our holding that the traffic lanes on Grand Avenue, separated by a thirty-foot parkway, constituted two separate intersecting roadways, pursuant to Section 64–14–17(b) supra, the above instructions are inapplicable and the court did not err in refusing them. There was no stop sign at the south lane entrance which required the defendant to stop and yield the right of way before proceeding into the intersection in which the collision occurred. The defendant testified that when he first observed the truck it was practically in front of the entrance to the French-Fitzgerald Mortuary, on Grand Avenue, some 225 to 250 feet away from the stop sign. In this connection the court properly instructed the jury as follows:

"No. 5. * * * The accident in question occurred in the south roadway. I instruct you that there was no stop sign facing Dr. Clauser as he approached and entered the south roadway of Grand Avenue. Therefore, Dr. Clauser had no duty to stop before entering the south intersection by reason of any statute, ordinance or stop sign. He had a duty only to operate his automobile in a careful and prudent manner."

■ It is also contended that the court erred in ordering counsel for appellants to desist from asking appellee whether or not he had paid a fine in police court *for failing to stop* at the stop sign erected on the northwest corner of Oak Street and Grand Avenue at its entrance into the intersection of north traffic lane on Grand Avenue. We do not agree with this contention.

■ Appellants are correct in their contention that proof of a plea of guilty and conviction based thereon is admissible under certain circumstances where the same act is involved in both criminal and civil proceedings.

The trouble here, however, is that there is no legal plea of guilty. There was no stop sign facing appellee as he entered the south lane on Grand Avenue. The evidence shows that the police officer who issued the traffic ticket inadvertently wrote thereon "running a stop sign" while the same should have read "failure to yield a right of way". So the fine paid by the appellee was in fact for the alleged failure to yield the right of way. In this connection the following transpired in the absence of the jury.

"Mr. Sutin: * * *. This officer told me personally that the giving of that ticket was an error and it should not have been given and I don't know of the proper way of keeping that mistake out of the evidence in the absence of an instruction by the Court to counsel for the plaintiffs not to inquire · about the giving a ticket for running a stop sign. Officer Darwin, have I quoted you correctly?

"Officer Darwin: That's right sir. I felt it should have been 'failure to yield a right of way.'"

█ It is next contended that the court erred in ordering the consolidation of the causes of action for trial. The question of consolidation of actions is always one of discretion with the trial court, and its discretion will not be interfered with, unless abused. 1 C.J. Section 315, p. 1123;

Thompson on Trials (2d Ed.) Section 210, p. 231; Kandelin v. Lee Moor Contracting Co., 37 N.M. 479, 24 P.2d 731. It is very much to be desired that where consolidation is possible it should be ordered by the trial courts in the interest of expediting litigation and decreasing the expense thereof. The purpose thereof should be to simplify the work of the trial court as far as possible. 1 C.J.S. Actions § 108, p. 1342. We hold, that where plaintiffs have brought several actions against the same defendant, the subject matter of the litigation being the same in each action, requiring substantially the same general character of evidence in each action, the court, in order to save time and expense to the litigants, as well as its own time, is authorized on its own initiative or on motion of the plaintiff or defendant to consolidate the actions for trial. In the instant case, we cannot say from the pleadings and the evidence adduced at the trial that the court abused its discretion in consolidating the two actions for trial.

█ Finally it is contended that the court erred in refusing to permit the jury to view the truck. In disposing of a similar contention, we held in Thompson v. Anderman, 59 N.M. 400, 285 P.2d 507, that it was a matter resting within the sound discretion of the trial court and its refusal of such request was not an abuse of discretion, and we reaffirm that holding.

Finding no reversible error the judgment of the district court is affirmed.

It is so ordered.

SADLER, McGHEE, COMPTON and KIKER, JJ., concur.