361 P.2d 451

John L. ALFORD, Plaintiff-Appellee,

v.

Heister H. DRUM, Administrator of the Estate of Clinton L. Prevost, Deceased, Defendant-Appellant.

No. 6815.

Supreme Court of New Mexico.

April 21, 1961.

Keleher & McLeod, Russell Moore, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, John P. Eastham, Albuquerque, for appellee.

COMPTON, Chief Justice.

This is an action by appellee, plaintiff below, to recover damages for personal injuries sustained by him in an accident allegedly caused by the reckless and heedless acts of the defendant's intestate, Clinton L. Prevost, in the operation of an automobile in which the plaintiff was riding as a guest. A trial by jury resulted in a verdict for the plaintiff.

The appellant first complains of the action of the trial court in refusing to direct a verdict for him at the conclusion of the trial and the denial of his motion for judgment notwithstanding the verdict and for a new trial. The question presented, therefore, is whether the plaintiff's evidence, together with all reasonable inferences to be drawn therefrom when viewed in a light most favorable to him, evidenced a heedless or reckless disregard of his safety by the driver of the automobile.

The Guest Statute, § 64–24–1, 1953 Comp., reads:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

The automobile involved, a 1955 Ford Thunderbird, was owned and being driven by Prevost in a southerly direction on Highway 41, paralleling a railroad track on his right, at the time of the accident. The accident occurred about 10:00 P.M., April 9, 1955, on a curve approaching the crossing of Highway 41 with the railroad track immediately north of Estancia. The crossing is at a 90 degree angle.

The parties met earlier that evening in Albuquerque, drove around awhile and then decided to go to a dance at Moriarty. Richard W. Hill, also a guest, accompanied them and drove the automobile to the mouth of Tijeras Canyon at a speed of 40 to 45

miles per hour. Prevost then took over and drove to Moriarty at an estimated speed of 100 miles per hour, Hill riding in the middle and Alford to his right. At Moriarty, Alford left the automobile and went into the dance hall to check on the dance there, but returned shortly with an unfavorable report. It was then that they decided to go to another dance at Estancia, south of Moriarty, the parties occupying the same relative positions in the front seat as before. To go to Estancia, they had to cross the railroad track; however, they did not reach the latter dance, as the accident occurred on the outskirts of Estancia, and as a result of which Prevost was killed and the plaintiff was seriously injured.

Turning to the scene of the accident, there is evidence that immediately prior thereto Prevost was driving at a speed of approximately 109 miles per hour. The evidence further shows that when he applied his brakes, the automobile left skid marks for a distance of 198 feet on the pavement, then skidded and somersaulted a distance of 193 feet before coming to rest on the railroad embankment on the opposite side of the railroad track.

■ With respect to speed, it is well established in this jurisdiction that speed alone, or speed accompanied by inadvertence, or speed accompanied by acts of mere negligence, as the term is ordinarily understood, does not meet the test of the Guest Statute. Carpenter v. Yates, 58 N.M. 513, 273 P.2d 373; Fowler v. Franklin, 58 N.M. 254, 270 P.2d 389. But speed when accompanied by acts of wanton misconduct by a driver becomes an important factor. We repeat, Highway 41 is to the east and parallels the railroad track for a considerable distance, and crosses the track at a 90 degree angle on an "S" curve. A distance of 1,350 feet north of the apex of the curve there was a sign showing an "S" curve and a 30 mile speed limit; 900 feet north of the curve was a sign indicating a 90 degree angle with a 30 mile speed limit; and 675 feet north of the curve there was another sign indicating a 30 mile speed limit. Also, there were pairs of signs placed on opposite sides of the highway; two, 600 feet north of the curve, two, 500 feet north of the curve, and two, 400 feet north of the curve, all designed with alternating black and white stripes, and all of which were north of the point where Prevost applied his brakes. Some 160 feet north of the crossing, there was a crossing marker, an "X" scotch-lighted. Then, near the apex of the curve there was a sign with an arrow pointing to the west. And, further, there is evidence that as Prevost approached these signs, appellee said to him, "there is a curve up ahead," to which Prevost replied, "I think we can make it," or "we can take it."

■ On this record, we are satisfied that the facts related presented a prima facie

case under the statute, and were sufficient to warrant the jury's finding that Prevost's wanton misconduct evidenced a heedless and reckless disregard of the rights of his passenger, the appellee herein, and was the proximate cause of his injuries. It follows that the trial court properly denied appellant's motions. Berkstresser v. Voight, 63 N.M. 470, 321 P.2d 1115.

Appellant next complains of the admission into evidence of expert testimony as to the speed of the automobile. The witness Barnhart was called as an expert witness, and basing his opinion on facts not controverted, that is, the make of the automobile, measurements of skid marks, the location of the automobile after the accident, and on speed tests made by him at the scene of the accident, testified that in his opinion the automobile was traveling approximately 109 miles per hour when Prevost applied his brakes, and that it was traveling approximately 40 miles per hour when it left the highway.

■■ It is strongly contended that to permit expert testimony as to speed of the automobile based on evidence already before the jury invaded the province of the jury and constituted prejudicial error. We do not agree. We start with the general rule that the testimony of a duly qualified expert as to speed, based on skid marks, is admissible. Tate v. Borgman, 167 Neb. 299, 92 N.W.2d 697; State v. Bosch, 125 Mont.

566, 242 P.2d 477; Collins v. State, 86 Ga. App. 157, 71 S.E.2d 99; Davis v. Zucker, Ohio App., 106 N.E.2d 169. And whether a witness is shown to be qualified to testify as an expert, is a matter addressed to the judicial discretion of the trial court. Landers v. Atchison, Topeka & Santa Fe Railway Co., 68 N.M. 130, 359 P.2d 522.

■■ There can be no question as to the qualifications of the witness Barnhart. He held a science degree in mechanical engineering and engaged in actual practice in that field until 1959. He was a member of the New Mexico Society of Professional Engineers, also the American Society of Mechanical Engineers. With this background, he testified as to various speed tests actually made by him at the scene of the accident some 4 years later, using a 1955 Ford Thunderbird automobile comparable in size and weight to the Prevost automobile, and made under substantially the same circumstances and conditions existing at the time of the accident. While evidence of physical facts, such as skid marks, distances, photographs, etc., were before the jury, evidence of speed had not been introduced. There was no invasion of the province of the jury by admitting the expert testimony. Similarity of conditions being substantially the same when the tests were made, the evidence as to the experiments made by the witness Barnhart was admissible. State v. Stewart, 30 N.M. 227, 231 P. 692; Kelly v. Troy Laundry Co., 46 Idaho 214, 267 P. 222;

Truva v. Goodyear Tire & Rubber Co., 124 Wash. 445, 214 P. 818. See Annotation 85 A.L.R. 480, where the cases are assembled

The trial date was originally set for September 22, 1959, before the court without a jury, a jury having been waived for failure to make demands therefor. At that time the parties appeared for the trial, whereupon appellant moved for a continuance due to the sudden illness of his attorney. The motion was resisted on the ground that appellee had come a long distance from his home in Paris, Texas, and would be put to great inconvenience and expense in returning for another hearing. Further, he had already incurred considerable expenses in having his witness present for trial. As an alternative, however, appellee moved for a trial by a jury in the event appellant's motion should be granted.

■ Both motions were granted by the court, and appellant contends that the court committed error in granting a jury trial. We see no error in the ruling of the court. The granting of the motion for a trial by jury was a matter within the discretion of the trial court, even though a jury had been waived pursuant to § 21–1–1(38) (d), 1953 Comp., being Rule 38(d), our Rules of Civil Procedure. This is made clear by § 21–1–1 (39) (a), 1953 Comp., being Rule 39(a), our Rules of Civil Procedure, which reads:

"All issues not set for trial to a jury as provided in Rule 38, shall be tried by the court; but notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."

We note that Rule 39(a) is identical with Rule 39(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the Federal Courts in construing the rule hold that the granting of a trial by jury, where the jury has been thus waived, was a matter within the discretion of the court. See S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495; Alberti v. Automobile Shippers, D.C. Ohio, 9 F.R.D. 323; Ulrich v. Ethyl Gasoline Corp., D.C.Ky., 2 F.R.D. 357; Jackson v. King, 5 Cir., 223 F.2d 714; Hazelrigg v. American Fidelity & Casualty Company, 10 Cir., 241 F.2d 871, 873. We quote in part from the latter case:

"* * * Under all the decisions where the right to demand a jury has been waived, the trial court is vested with a broad degree of discretion in determining whether a jury trial shall nonetheless be granted. * * *"

Further, appellant claims the court erred in giving the following instruction:

"No. 16. If you find and believe from the evidence in this case that de-

**304**

fendant was guilty of heedlessness or operated his motor vehicle in reckless disregard of the rights of plaintiff at the time of the accident in question, and that such heedlessness or reckless disregard of the rights of plaintiff was a proximate cause of the accident and injuries and that plaintiff was not reckless or heedless in his own right, then the plaintiff is entitled to recover and your verdict should be for the plaintiff."

The appellant objected, and we quote, "to the giving of Instruction No. 16 for the reason that the same is not a correct statement of the law, that it is cumulative and that it is in conflict and contradictory to other instructions given by the Court." Obviously the objection does not point out the claimed vice in the instruction, nor does it direct the court's attention to any possible conflict with other instructions. To preserve the question for review, the objection should have been specific so that the court could have timely corrected the error, if any, appearing in the instruction given. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671.

From what has been said, the judgment should be affirmed, and it is so ordered.

CARMODY and CHAVEZ, JJ., concur.

MOISE and NOBLE, JJ., not participating.